## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Nextpulse, LLC, | |
|      Plaintiff, | |
| v. | Case No. 22 CV 03239 |
| | Honorable Nancy L. Maldonado |
| Life Fitness, LLC, KPS Capital Partners, LP, and Lumos International Holdings, B.V., | |
|      Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nextpulse, LLC ("Nextpulse") filed this suit bringing claims against Defendant Life Fitness, LLC ("Life Fitness") under the Copyright Act, 17 U.S.C. § 106 *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, for infringing Nextpulse's copyrights and misappropriating Nextpulse's trade secrets. (Dkt. 66 ¶¶ 50–55, 63–73.) Nextpulse also brings a state law claim for tortious interference with a contract against all Defendants, Life Fitness, KPS Capital Partners, LP ("KPS"), and Lumos International Holdings, B.V. ("Lumos"), for inducing Brunswick Corporation ("Brunswick") to breach its contractual obligations to Nextpulse. (*Id.* ¶¶ 56–62.) Life Fitness, KPS, and Lumos have separately filed motions to dismiss Nextpulse's claims against them. (Dkt. 27; Dkt. 43; Dkt. 75.) Nextpulse also filed a motion to conduct jurisdictional discovery and to allow further opposition in response to KPS's motion to dismiss. (Dkt. 58.)

For the reasons stated in this Opinion, Life Fitness's motion to dismiss, (Dkt. 27), is granted in part and denied in part. KPS and Lumos's motions to dismiss, (Dkt 43; Dkt. 75), are granted. Specifically, Nextpulse's tortious interference claim against Life Fitness, KPS, and Lumos is dismissed without prejudice. Accordingly, Nextpulse's motion to conduct jurisdictional discovery

and allow further opposition in response to KPS, (Dkt. 58), is also denied. Nextpulse may amend its pleadings by April 26, 2024.

## Background

The Amended Complaint alleges the following facts, which the Court accepts as true for the purpose of considering the instant motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Plaintiff Nextpulse is a Delaware limited liability company whose principal place of business is California. (Dkt. 66 ¶ 1.) Nextpulse is the successor in interest to Netpulse, a company that "developed software applications, content delivery systems, and network-based services related to exercise equipment." (*Id.* ¶ 9.) In 2011, Netpulse acquired Virtual Active, a company that developed cardio exercise video content, and the intellectual property rights to its video content. (*Id.* ¶ 10, 12.) Brunswick is a company that designed, manufactured, marketed, and sold fitness equipment through its Life Fitness division. (*Id.* ¶ 11.) After its acquisition of Virtual Active, Netpulse created an entertainment and advertising platform for exercise equipment and offered to license Virtual Active videos to Brunswick in exchange for putting Netpulse's platform on Brunswick's Life Fitness consoles. (*Id.* ¶ 13.) In 2012, Netpulse and Brunswick entered into a software licensing agreement ("SLA") that was amended several times. (*Id.* ¶ 14.) Netpulse and Brunswick also entered into a virtual active license agreement ("VALA") and an advertising services agreement ("ASA"). (*Id.* ¶¶ 14–15.)

These three contracts (collectively, "the Contracts") granted Brunswick authority to use the Netpulse Interface, "a touchscreen interface designed to work with [Brunswick's] equipment . . . that controlled the Netpulse entertainment platform and enabled display and network connectivity"; Virtual Active videos; and other related intellectual property. (*Id.* ¶ 16.) The Contracts gave Brunswick access to confidential information and contained confidentiality

2

provisions protecting against disclosure. (*Id.* ¶¶ 17, 18, 22, 25.) Additionally, they included anti-assignment, anti-sublicensing, and anti-transfer provisions. (*Id.* ¶¶ 18, 20, 21, 23, 24, 26.) Nextpulse alleges that even after the Contracts' termination, certain terms, such as the confidentiality clauses, survived. (*Id.* ¶¶ 19, 22, 25.)

In November of 2018, Netpulse reorganized and was merged into Nextpulse. (*Id.* ¶ 29.) Alleging that Brunswick failed to meet its obligations under the Contracts, Nextpulse sued Brunswick in California state court for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and misappropriation of trade secrets in connection with the Contracts. (*Id.* ¶ 30.) Nextpulse alleges that "[e]ffective at latest by 30 days after the filing of the California Litigation" the Contracts were terminated due to Brunswick's breach. (*Id.* ¶ 28.) One month after Nextpulse sued Brunswick, Brunswick reorganized and spun off its Life Fitness division into a wholly owned subsidiary. (*Id.* ¶ 32.) In approximately 2018, Brunswick also became engaged in negotiations with KPS to acquire Life Fitness from Brunswick. (*Id.* ¶ 31.) In 2019, Brunswick sold Life Fitness to Lumos. (*Id.* ¶ 34.) Lumos is a limited liability company whose principal place of business is in Amsterdam. (*Id.* ¶ 4.) Lumos is an affiliate of KPS, a New York limited partnership whose principal place of business is in New York. (*Id.* ¶ 3.)

During the California state action, Nextpulse learned that Brunswick transferred confidential information and intellectual property, granted to Brunswick by the Contracts, to Life Fitness. (*Id.* ¶ 35.) Nextpulse alleges that Brunswick transferred Netpulse intellectual property and confidential information to Life Fitness upon completion of the sale of Life Fitness to Lumos. (*Id.* ¶ 37.) According to Nextpulse, defendants Life Fitness, KPS, and Lumos were all aware of the Contracts, including their confidentiality, anti-transfer, and anti-assignment provisions. (*Id.* ¶ 39.) Life Fitness has personnel who were employees when Life Fitness was still a division of

Brunswick, and KPS and Lumos would have learned of the Contracts during the due diligence process for their acquisition. (*Id.* ¶ 39.) Nextpulse alleges that Life Fitness, KPS, and Lumos "intentionally interfered with the contractual relationship between Netpulse and [Brunswick], and induced [Brunswick] to breach the Contracts by causing [Brunswick] to illegally, and in breach of the agreements, transfer Netpulse's confidential and proprietary information to [Life Fitness] and/or violate the confidentiality clauses in those agreements." (*Id.* ¶ 40.)

Nextpulse alleges that it owns trade secrets, copyrights, and other intellectual property as Netpulse's successor in interest due to Netpulse's development of these rights and interests, and, otherwise, through acquisitions, transfers, or assignments. (*Id.* ¶ 41.) In 2019, Nextpulse entered into a contract with Virtual Active and Forward Motion Pictures ("FMP"), which transferred certain intellectual property to Virtual Active and/or FMP. (*Id.*) In 2022, Virtual Active and FMP "transferred ownership and rights to specified video content" to Nextpulse (hereinafter, the "2022 Agreement"), and Nextpulse registered copyrights in the Virtual Active videos. (*Id.*)

According to the Amended Complaint, Life Fitness began using Netpulse's intellectual property and confidential information following completion of the sale of Life Fitness to Lumos. (*Id.* ¶ 38.) Nextpulse alleges that Life Fitness has "unlawfully used, reproduced, distributed, and/or made into a derivative work [Netpulse's] copyrighted computer software, without authorization or right to do so . . . ." (*Id.* ¶ 43.) Nextpulse further alleges that Life Fitness continues to do so "knowingly, deliberately, and willfully." (*Id.* ¶ 49.)

Life Fitness filed this instant motion to dismiss Nextpulse's Copyright Act, tortious interference with a contract, and DTSA claims pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 27.) KPS and Lumos have also filed motions to dismiss Nextpulse's tortious interference claim against them,

and they both claim that this Court does not have personal jurisdiction over them. (Dkt. 43; Dkt. 75.)

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

All three defendants, Life Fitness, KPS, and Lumos, have filed motions to dismiss Nextpulse's claims against them. (Dkt. 27; Dkt. 43; Dkt. 75.) The Court will discuss each defendant's motion below.

### I.  Life Fitness's Motion to Dismiss

In its motion to dismiss, Life Fitness argues that this Court should dismiss Nextpulse's Copyright Act infringement claim, tortious interference claim, and DTSA claim against it. (*See* Dkt. 28.) The Court denies Life Fitness's motion to dismiss Nextpulse's Copyright Act claim and

its DTSA claim. The Court, however, grants Life Fitness's motion to dismiss Nextpulse's tortious interference claim. Nextpulse's tortious interference claim is dismissed without prejudice.

As a threshold matter, the Court will briefly address the choice of law issue somewhat raised in the briefing. When a court sits in diversity (or supplemental jurisdiction), it must apply the substantive law of the forum state, including its choice of law rules. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014); *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 684 (7th Cir. 2014). If a party seeks to challenge which state law should apply, the plaintiff must make "the threshold showing Illinois courts require before performing a choice-of-law analysis": "a choice-of-law determination is required only when the moving party has established an actual conflict between state laws." *Spitz*, 759 F.3d 724 at 729 (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)); *McCoy*, 760 F.3d at 684 ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.") (citing *Camp v. TNT Logistics Corp*., 553 F.3d 502, 505 (7th Cir. 2009)). Therefore, if either party seeks to apply California law, the moving party must establish "an actual conflict between state laws." The parties here, however, alternate between relying on California and Illinois law in their briefing, without making an argument that there is a conflict between state laws. As neither party has made the threshold showing required for a choice of law determination, the Court will apply Illinois law.

### A. Count I – Copyright Infringement

Life Fitness argues, in support of dismissal of Nextpulse's copyright infringement claim, that Nextpulse does not have standing to bring an infringement claim relating to the Virtual Active video copyright because it has not demonstrated that it owns the copyrights to the Virtual Active

videos. (Dkt. 28 at 9–11.)[1] Additionally, Life Fitness argues that Nextpulse may not request statutory damages, a finding of willfulness, and attorney's fees for its copyright infringement claims, as the Amended Complaint does not allege that the infringement occurred after registration of the copyrights. (*Id.* at 11–12.)

i. Copyright Act Standing

To bring a copyright infringement claim under the Copyright Act, the plaintiff must be the copyright owner or the exclusive licensee. 17 U.S.C. § 501(b). The Seventh Circuit has clarified that the § 501(b) requirement is not an Article III standing requirement. *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381 (7th Cir. 2011).[2] The issue of whether a plaintiff is a copyright owner or exclusive licensee of a copyright is therefore subject to Rule 8 pleading standards for a 12(b)(6) motion. *Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, No. 12 C 10275, 2013 WL 4011052, at *2 (N.D. Ill. Aug. 6, 2013). Courts have held that certificates of copyright registration are prima facie evidence of ownership. *See e.g.*, *Symbria, Inc. v. Callen*, No. 20-CV-4084, 2022 WL 60530, at *14 (N.D. Ill. Jan. 6, 2022).

Nextpulse alleges that it owns the copyrights in question, and it has certificates of registration of the copyrights. (Dkt. 66 ¶¶ 44, 46; Dkts. 29-6, 29-7.) This allegation suffices for the purposes of a 12(b)(6) motion. *Symbria, Inc.*, No. 20-CV-4084, 2022 WL 60530, at *14 ("It is well settled that in order to state a claim of copyright infringement, a complaint need allege only ownership, registration, and infringement. Other details of the claim may be obtained by discovery.") (quoting *Sweet v. City of Chicago*, 953 F. Supp. 225, 227 (N.D. Ill. 1996)); *Intercom*

---

[1] In citations to the docket, page numbers are taken from the CM/ECF header.

[2] Life Fitness cites *Apex Digital v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009), and *Leventhal v. Schenberg*, No. 03-cv-8772, 2004 WL 1718512 (N.D. Ill. July 30, 2004), to suggest that § 501(b) standing "is a jurisdictional requirement and not a mere pleading requirement," but both cases were decided before *HyperQuest, Inc. v. N'Site Sols., Inc.* (*See* Dkt. 28 at 9, 10.)

*Ventures, LLC*, No. 12 C 10275, 2013 WL 4011052, at *2 ("At the pleading stage, however, Intercom need not provide evidence to support its allegation that it has an exclusive distribution right; the allegation alone is sufficient to survive a Rule 12(b)(6) motion.").

To the extent that Life Fitness seeks to rebut the prima facie evidence of ownership established by Nextpulse's certificates of registration, rebuttal is inappropriate at the motion to dismiss stage. *See Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Uninc. Ass'ns Identified on Schedule A Thereto*, No. 22 C 1801, 2022 WL 17451607, at *3 (N.D. Ill. Dec. 5, 2022) ("[A]t the motion to dismiss stage, the Court accepts Plaintiffs' allegations that they have obtained a valid copyright for the Fidget Cube product and leaves the question of the validity of the copyright for a more developed record."). The Court therefore declines to decide the parties' dispute over the validity of the 2022 Agreement at this point of litigation.

The Court also finds that it is reasonable to infer that Life Fitness infringed Nextpulse's copyrights after they were registered. A plaintiff may only request statutory damages, a willfulness finding, and attorney's fees for copyright infringement if the alleged infringement occurred after registration of the copyrights. 17 U.S.C. § 412; *see Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09-cv-0003, 2009 WL 1703015, at *2 (N.D. Ill. June 18, 2009). Nextpulse alleges that Life Fitness has, without authorization, "unlawfully reproduced, distributed, publicly displayed, and/or created derivative works" of Nextpulse's copyrighted computer software and Virtual Active videos. (Dkt. 66 ¶¶ 43, 45.) Nextpulse further alleges that Life Fitness continues to "deliberately and willfully" infringe Nextpulse's copyrights in its computer software and Virtual Active videos. (*Id.* ¶ 49.) Taking these allegations to be true, it is reasonable to infer that Life Fitness infringed Nextpulse's copyrights after Nextpulse registered its copyrights as well.

### B.  Count II – Tortious Interference with a Contract

Life Fitness makes several arguments in support of its motion to dismiss Nextpulse's tortious interference claim, including that  the Illinois Trade Secrets Act ("ITSA") preempts the tortious interference claim. (Dkt. 28 at 13–14.) As the Court finds that the ITSA preempts Nextpulse's tortious interference claim, the Court need not address Life Fitness's other arguments.

The ITSA, 765 ILCS 1065/1 *et seq.*, is a comprehensive statutory scheme meant to protect trade secrets and "displace[] conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8; *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2017 WL 4340123, at *5 (N.D. Ill. Sept. 29, 2017).[3] "The ITSA preempts claims for misappropriation of confidential information (whether a trade secret or not); it does not preempt claims that do not hinge on whether the information at issue is confidential." *Westrock Co. & Victory Packaging, LP v. Dillon*, No. 21-CV-05388, 2021 WL 6064038, at *18 (N.D. Ill. Dec. 22, 2021) (citing *Hecny Transportation, Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005); *Spitz*, F.3d 724 at 733. Courts have considered whether ITSA preemption applies at the motion to dismiss stage, even when the plaintiff has not brought independent claims under the ITSA. *See, e.g.*, *Opus Fund Servs. (USA) LLC*, 2017 WL 4340123, at *5; *Organ Recovery Sys., Inc. v. Pres. Sols., Inc.*, No. 11 C 4041, 2012 WL 116041, at *6 (N.D. Ill. Jan. 16, 2012); *Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 4502125, at *3 (N.D. Ill.

---

[3] As discussed above, the parties were unclear on whether Illinois law or California law should apply. Even if the Court were to apply California law, the Court would likely still find that the tortious interference claim is preempted because California has a trade secrets law akin to the ITSA.  The California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code § 3426.7, "implicitly preempts alternative civil remedies based on trade secret misappropriation" that are not contractual or criminal remedies. *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1157 (E.D. Cal. 2017). "CUTSA preempts a claim that is based on the 'same nucleus of facts as the misappropriation of trade secrets claim.'" *Id.* CUTSA caselaw has also held that "CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (citing *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27, 53 n. 22 (Cal. Ct. App. 2010), *disapproved on other grounds* by *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)).

Oct. 1, 2021). In deciding whether ITSA preemption applies, the court asks whether a plaintiff's claim "would stand regardless of whether trade secrets were at issue."" *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 835 (N.D. Ill. 2019).

The parties dispute whether there was an existing contract at the time, but for the purposes of deciding the ITSA preemption issue, the Court will assume that Life Fitness had surviving contractual obligations to keep information provided by Netpulse confidential and to not assign or transfer the licenses and rights granted under the Contracts.

The Court concludes that the ITSA preempts Nextpulse's tortious interference claim. Nextpulse alleges that Life Fitness induced Brunswick to "transfer Netpulse's confidential and proprietary information to [Life Fitness] and/or violate the confidentiality clause." (Dkt. 66 ¶ 40.) Nextpulse's tortious interference claim would not stand if the information disclosed by Brunswick were not confidential. *See Lumenate Techs., LP v. Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *7 (N.D. Ill. Nov. 11, 2013) (finding ITSA preempted tortious interference claim because claim was based on breach of nondisclosure agreements and would not stand absent disclosure of confidential information); *Gen. Elec. Co.*, 394 F. Supp. 3d at 834–35 (finding ITSA preempted tortious interference claim because claim was based on breach of confidentiality agreements). In other words, Brunswick could not have breached the confidentiality provisions of the Contracts unless the information it allegedly gave to Life Fitness was confidential.

Nextpulse further asserts that the ITSA does not preempt its tortious interference claim because Nextpulse also alleges that Life Fitness induced Brunswick to transfer or assign rights to Life Fitness, in breach of the Contracts, increasing the value of the Life Fitness sale and diverting licensing revenue from Nextpulse. (Dkt. 38 at 9) (citing Dkt. 66 ¶¶ 60, 61). The Court disagrees. Nextpulse defines "Netpulse Trade Secrets" as "the Netpulse Technology, the Netpulse

Confidential Information, and the confidential information identified and defined under the Contracts." (Dkt. 66 ¶ 64.) Nextpulse broadly defines "Netpulse Technology" as "source code, executable code, videos, and other intellectual property" including the "Netpulse Interface" and Video Active videos to be used with the Netpulse Interface and Brunswick's fitness equipment. (*Id.* ¶ 16.) The VALA includes within its definition of "Confidential Information," "The Licensed Software." (Dkt. 29-2 at 13.) The ASA includes within its definition of "Confidential Information," "The Advertising Service and its associated mechanisms." (Dkt. 29-3 at 10.) The licenses and rights granted by the VALA and the ASA to Brunswick implicate either "Netpulse Technology" or "Confidential Information," as defined by the VALA and ASA. (*See* Dkt. 29-2 at 5–7; Dkt. 29-3 at 6.) To improperly transfer or assign these licenses and rights is to transfer or assign the right to use Netpulse Trade Secrets or confidential information, as Nextpulse or the Contracts have defined either of those terms; by the terms of the Contracts, there would be no breach of these provisions if the "Netpulse Trade Secrets" or confidential information were not at issue. Nextpulse's tortious interference claim, even to the extent that it is based on the anti-assignment and anti-transfer provisions of the Contracts, is therefore based on the misappropriation of trade secrets.

The allegations underlying Nextpulse's DTSA claim support the Court's conclusion. Nextpulse alleges that Life Fitness "misappropriated the Netpulse Trade Secrets by taking possession, custody, and control of the Netpulse Trade Secrets." (Dkt. 66 ¶ 68.) Nextpulse also alleges that Brunswick and Life Fitness admitted in the California action that Brunswick no longer possesses Netpulse Trade Secrets because it transferred them to Life Fitness. (*Id.*) As the Court understands the Amended Complaint, these allegations appear to be the same conduct— improperly assigning or transferring rights under the Contracts to Life Fitness—underlying

Nextpulse's tortious interference claim. Accordingly, the Court grants Life Fitness's motion to dismiss the tortious interference claim on ITSA preemption grounds.

Nextpulse's tortious interference claim is, however, denied without prejudice to give Nextpulse an opportunity to amend its pleadings in the event Nextpulse can show that it is seeking redress for wrongs that do not hinge on confidential information.

### C. Count III – DTSA

Life Fitness argues that Nextpulse's DTSA claim should be dismissed because it is time-barred, Nextpulse failed to meet the interstate commerce requirement of the DTSA, and Nextpulse failed to demonstrate that the alleged trade secrets have independent economic value. (Dkt. 28 at 16–20.)

#### i. Statute of Limitations

A claim under the DTSA has a three-year statute of limitations, "beginning when the plaintiff discovers or by the exercise of reasonable diligence should have discovered the alleged misappropriation." *Sonrai Sys., LLC v. Waste Connections, Inc.*, No. 21-CV-02575, 2023 WL 2266147, at *8 (N.D. Ill. Feb. 28, 2023) (citing 18 U.S.C § 1836(d)). "Statute of limitation defenses . . . are typically addressed at summary judgment or trial, so long as 'there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense.'" *Id*. (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)). The Illinois discovery rule governs DTSA claims, and "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 1474795, at *2 (N.D. Ill. Apr. 12, 2010) (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630–31 (Ill. 1994)).

The parties dispute when the clock began running on Nextpulse's DTSA claim. First, Life Fitness argues that Nextpulse should have known of the alleged misappropriation of trade secrets when the Contracts were terminated in either 2016 or 2018, as both the VALA and ASA required the return of any trade secrets post-termination. (Dkt. 28 at 17) (citing Dkt. 29 ¶ 7; Dkt. 29-4 ¶ 87; Dkt. 66 ¶ 28). Second, Life Fitness argues in its reply that the clock started to run in 2018 when Nextpulse filed its complaint against Brunswick in California state court, and Brunswick spun off Life Fitness into a wholly owned subsidiary. (Dkt. 51 at 13.) According to Life Fitness, Nextpulse reasonably should have known at that time that Life Fitness would continue to possess the trade secrets, having been privy to them as a former division of Brunswick. (*Id*.; Dkt. 86 at 5.)[4] Finally, Life Fitness, citing Nextpulse's opposition to Brunswick's demurrer to Nextpulse's Third Amended Complaint in the California state action, asserts that Nextpulse admitted that its trade secret claim is partially based on "the disclosure/transfer of information to Life Fitness, LLC in 2018." (Dkt. 86 at 5.)

In response, Nextpulse argues that the termination of Netpulse and Brunswick's Contracts are irrelevant because the termination of a contract does not commence the statute of limitations against a defendant that was not a party to the relevant contract. (Dkt. 38 at 12.) As the Court understands Nextpulse's argument, Life Fitness, the subsidiary company, was not a party to the contract, and so Nextpulse did not reasonably know that Life Fitness had misappropriated trade secrets by token of Brunswick's own misappropriation alone. Nextpulse further argues that the Amended Complaint alleges that Life Fitness received and used Nextpulse's confidential

---

[4] In support of this argument, Life Fitness mentions that Nextpulse brought a claim against Brunswick in its Second Amended Complaint in the California litigation for misappropriation of trade secrets, (Dkt. 51 at 13), but, as Nextpulse points out, Life Fitness failed to clarify that the Second Amended Complaint was filed in 2021. (*See* Dkt. 46-1.)

information on or about June 27, 2019, and that Nextpulse did not become aware of the misappropriation until 2022 during discovery in the California state litigation. (Dkt. 38 at 11–13.)

The Court finds that Nextpulse's DTSA claims are not time-barred. Nextpulse alleges that it did not know of the misappropriation by Life Fitness until early 2022. (Dkt. 38 at 12–13) (citing Dkt. 66 ¶ 35). Even if Nextpulse reasonably should have known about the injury earlier than 2022, the injury itself—as alleged by Nextpulse—did not occur until the sale of Life Fitness to Lumos on or around June 27, 2019. (Dkt. 66 ¶¶ 37–38.) Three years from June 27, 2019 (the alleged injury) is June 27, 2022. Nextpulse filed its Complaint on June 21, 2022, which means that it was within the statute of limitations period. Thus, based on the Amended Complaint, the statute of limitations has not run.

Life Fitness's arguments to the contrary are unavailing. Life Fitness's argument that Nextpulse reasonably should have known of the misappropriation when Life Fitness became an independent subsidiary essentially asks the Court to make an inference in its favor, contrary to the allegations in the Amended Complaint. The legal standard for motions to dismiss direct courts to do the opposite. *See Kubiak v. City of Chicago*, 810 F.3d at 480–81. Additionally, Life Fitness points out that in Nextpulse's response to Brunswick's demurrer in the California state action, Nextpulse references the "disclosure/transfer of information to Life Fitness, LLC in 2018." (Dkt. 86 at 5.) While a Court may take judicial notice of facts contained in public records, a court cannot take judicial notice of a lawyer's brief or motion, as they are not facts. *Renken v. Illinois State Toll Highway Auth.*, No. 22-CV-5193, 2023 WL 4625520, at *2 (N.D. Ill. July 19, 2023) (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)); *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). The Court therefore declines to take judicial notice of

14

Nextpulse's statement in its response motion to Brunswick's demurrer motion in the California state action.

ii.   Interstate Commerce Requirement

Next, Life Fitness argues that Nextpulse failed to meet the interstate commerce requirement of the DTSA. (Dkt. 28 at 18–19.) A plaintiff bringing a DTSA claim must demonstrate that the trade secrets are "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

 The parties dispute whether a plaintiff can meet the interstate commerce requirement by showing that either a plaintiff or defendant uses the trade secret in interstate commerce. Life Fitness argues that "[t]he correct standard is whether the plaintiff uses the trade secrets in interstate commerce" and cites to a string of examples where a court considered the plaintiff's use to evaluate the interstate commerce requirement.  (Dkt. 51 at 15.) Nextpulse, in contrast, argues that "the 'product' may be anyone's product, not just plaintiff's, and the secrets need only 'relate to' the product used in, or intended to be used in, interstate commerce." (Dkt. 85 at 5.) Nextpulse points out that there is nothing in the statutory text that limits use only to the plaintiff and relies on *Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*, which held that a plaintiff's allegations that the defendant had used the plaintiff's trade secrets to create its product were sufficient for the interstate commerce requirement. No. CV 17-2900 (JLL), 2017 WL 4391748, at *6 (D.N.J. Oct. 2, 2017).

This Court concludes that, to meet the interstate commerce requirement, a plaintiff may allege that the trade secrets are used in the defendant's product. The statute does not specify whether the product or service incorporating the trade secrets needs to be the plaintiff's or the defendant's. 18 U.S.C. § 1836(b)(1); *see Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th

Cir. 2016) ("As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning."). Aside from *Marimar Textiles, Inc.*, at least one other court has analyzed the interstate commerce element by also looking at defendants' use of the trade secrets. *See Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-CV-00073-MR, 2021 WL 861712, at *16 (W.D.N.C. Mar. 8, 2021). Nextpulse has alleged that Life Fitness incorporated the trade secrets into its products, which Life Fitness has sold and continues to sell in interstate commerce. (Dkt. 66 ¶ 69.) Thus, Nextpulse has adequately pled the interstate commerce element for its DTSA claim.

The cases cited by Life Fitness do not preclude the Court's interpretation of the DTSA. Life Fitness's cases are merely examples where the plaintiff's use sufficed to meet this requirement. *See, e.g.*, *Mid-Atl. Field Servs. LLC v. Barfield*, No. 3:23-CV-177-HEH, 2023 WL 4494175, at *4 (E.D. Va. July 12, 2023); *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 597–98 (E.D. Tex. 2021); *Yager v. Vignieri*, No. 16CV9367(DLC), 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017). Life Fitness argues that *Marimar Textiles, Inc.* is distinguishable because it "was decided only a year after the enactment of the DTSA and did not cite any legal authority for its conclusion." (Dkt. 86 at 7.) Yet, the exact same is true for *Wells Lamont Indus. Group, LLC*, a case that Life Fitness cites in support of its interstate commerce argument. (*See* Dkt. 86 at 7); No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017). As with the other cases cited by Life Fitness, the *Wells Lamont Indus. Group, LLC* court analyzed whether the plaintiff's goods were intended for use in interstate commerce, but it did not hold that a court could look only to the plaintiff's use for the interstate commerce requirement. *Id.* The Court is therefore unpersuaded that a plaintiff is precluded from relying on a defendant's product to meet the DTSA's interstate commerce requirement.

iii.   Economic Value Requirement

Finally, Life Fitness asserts that Nextpulse has not demonstrated that the Netpulse Trade

Secrets have commercial or economic value. (Dkt. 28 at 19–20.) Under the DTSA, a trade secret

includes:

> [A]ll forms and types of financial, business, scientific, technical, economic, or
> engineering information . . . if—
>> (A) the owner thereof has taken reasonable measures to keep such
>> information secret; and
>> (B) the information derives independent economic value, actual or
>> potential, from not being generally known to, and not being readily
>> ascertainable through proper means by, another person who can
>> obtain economic value from the disclosure or use of the
>> information . . . .

18 U.S.C. § 1839(3)(B). "For a DTSA claim to survive a motion to dismiss, a complaint need only

identify the alleged trade secret in a general sense." *Prominence Advisors, Inc. v. Dalton*, No. 17

C 4369, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017). Considering the low bar for identifying

a trade secret, courts assessing a DTSA claim at the motion to dismiss stage "only dismiss a claim

for lack of specificity on the pleadings in the most extreme cases." *In re Dealer Mgmt. Sys.

Antitrust Litig.*, 362 F. Supp. 3d 558, 574 (N.D. Ill. 2019) (citing *Fire 'Em Up, Inc. v. Technocarb

Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011)) (citation omitted).

The Court finds that Nextpulse has sufficiently alleged that the Nextpulse Trade Secrets

have independent economic value. Nextpulse alleged that they invested time and money in

developing the Nextpulse Trade Secrets. (Dkt. 66 ¶ 65); *see Prominence Advisors, Inc.*, 2017 WL

6988661, at *4 (finding that plaintiff's allegation that it "vested 'thousands of dollars and countless

hours of dedicated efforts' to creating alleged trade secrets was sufficient for pleading economic

value.")[5]. Nextpulse alleges that their trade secrets are not "generally known to the public or to other persons who could obtain economic value from their disclosure or use." (Dkt. 66 ¶ 65); *see In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d at 574 (finding that plaintiff's allegations that its trade secrets are not generally known or readily ascertainable demonstrated economic value). Finally, the Contracts included confidentiality provisions to safeguard against disclosure of the trade secrets. (Dkt. 66 ¶¶ 22, 25, 66, 67); *see Prominence Advisors, Inc.*, 2017 WL 6988661, at *4 (plaintiff's allegation that defendants promised not to use asserted trade secret to their competitive advantage showed economic value); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d at 574 (plaintiff's allegations that it made efforts to prevent disclosure of protected materials supported a finding of economic value); *PetroChoice LLC v. Amherdt*, No. 22-CV-02347, 2023 WL 2139207, at *4 (N.D. Ill. Feb. 21, 2023) (plaintiff's allegations that it took efforts to maintain secrecy of information, including by having defendant sign agreement with a confidentiality provision, demonstrated economic value). Nextpulse has therefore provided sufficient allegations to meet the DTSA's economic value requirement.

As the Court finds that Nextpulse's DTSA claim is not time-barred, and Nextpulse has adequately pled the interstate commerce and independent economic value elements of a DTSA claim, Life Fitness's motion to dismiss Nextpulse's DTSA claim is denied.

## II. KPS's and Lumos's Motions to Dismiss and Nextpulse's Motion for Limited Jurisdictional Discovery

KPS and Lumos also filed their own motions to dismiss Nextpulse's claims against them. (Dkt. 43; Dkt. 75.) Both defendants argue that Nextpulse failed to establish that this Court has personal jurisdiction over them, Nextpulse failed to state a claim of tortious inference against them,

---

[5] Life Fitness cites a case, *Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc*, which found the opposite. (Dkt. 28 at 20) (citing No. CV1810187CJCADSX, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019). That case, however, is an out-of-circuit case, and the Court is not bound or persuaded to follow it.

and the Court will lose subject matter jurisdiction over Nextpulse's state law claims against KPS and Lumos in the event the Court dismisses Nextpulse's DTSA claim against Life Fitness. (*See* Dkt. 44; Dkt. 76.) Nextpulse, in response to KPS's assertion that this Court lacks personal jurisdiction over them, filed a motion to conduct jurisdictional discovery and to allow further opposition to KPS's motion to dismiss. (Dkt. 58.)

In light of the Court's decision on the ITSA preemption issue, the Court grants KPS's and Lumos's motions to dismiss Nextpulse's tortious interference claim against them. Likewise, the Court denies Nextpulse's motion to conduct jurisdictional discovery and allow for further opposition. Nextpulse's tortious interference claim against KPS and Lumos is dismissed without prejudice and Nextpulse may amend its pleadings accordingly.

If Nextpulse chooses to amend its complaint, Nextpulse should be aware that, upon first glance, this Court's exercise of specific personal jurisdiction over KPS and Lumos appears tenuous. Specific personal jurisdiction requires that the defendant's contacts with the forum state be directly related to the challenged conduct. *Hanchett Paper Co. v. Off. Depot, LLC*, No. 23 C 1591, 2023 WL 5390229, at *2 (N.D. Ill. Aug. 22, 2023). The Seventh Circuit has summarized the requirements of specific jurisdiction as follows:

> [F]irst, defendants must have purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum; second, the alleged injury must arise out of or relate to the defendants' forum-related activities; and third, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*In re Sheehan*, 48 F.4th at 420. Courts in this district have applied the "express aiming" test for intentional tort claims to determine whether the defendants have "purposefully directed their activities at the forum state." *See Cityzenith Holdings, Inc. v. Liddell*, No. 22 C 5101, 2023 WL 5277888, at *4 (N.D. Ill. Aug. 15, 2023); *Pierson v. Nat'l Inst. for Lab. Rels. Rsch.*, No. 15 C

11049, 2016 WL 6093490, at *7 (N.D. Ill. Oct. 17, 2016); *Evanger's Cat & Dog Food Co., Inc. v. Thixton*, No. 17 C 9229, 2018 WL 3831505, at *3 (N.D. Ill. Aug. 13, 2018); *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017). Under the "express aiming" test, the plaintiff must show:

> First, the defendant must have engaged in "intentional conduct (or intentional and allegedly tortious conduct)." Second, the conduct must have been "expressly aimed at the forum state." And finally, the defendant must know that the effects of the allegedly intentional and tortious conduct "would be felt—that is, the plaintiff would be injured—in the forum state."

*Evanger's Cat & Dog Food Co., Inc.*, 2018 WL 3831505, at *3 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

Even assuming that KPS and Lumos "expressly aimed" their intentional conduct in Illinois by conducting due diligence in Illinois, Nextpulse has not alleged that it was injured in Illinois. Nextpulse has thus not shown that the effects of KPS and Lumos's tortious conduct against Nextpulse would be felt in Illinois, much less alleged that KPS and Lumos knew the effects would be felt in Illinois. Moreover, in determining personal jurisdiction, courts look at whether "the conduct underlying the claim was purposely directed at the forum state." *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) (quoting *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012)). Nextpulse, however, has not alleged that the interference occurred in Illinois. As a result, Nextpulse's assertion of personal jurisdiction over KPS and Lumos seems doubtful.

### Conclusion

For the reasons stated above, Life Fitness's motion to dismiss, (Dkt. 27), is granted in part and denied in part. KPS's and Lumos's motions to dismiss, (Dkt. 43; Dkt. 75), are also granted. Nextpulse's tortious interference claim against Life Fitness, KPS, and Lumos is dismissed without

prejudice. Lastly, Nextpulse's motion to conduct jurisdictional discovery and allow further opposition to KPS's motion to dismiss, (Dkt. 58), is denied. Nextpulse may amend its pleadings by April 26, 2024.

Dated: 3/31/24

_____
Honorable Nancy L. Maldonado
U.S. District Judge