IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXTPULSE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LIFE FITNESS, LLC, <br><br> Defendant. | Civil Action No. 1:22-CV-03239 <br><br><br> Judge Thomas M. Durkin <br><br> Magistrate Judge Maria Valdez |

**KATHRYN C CURRY'S OBJECTIONS TO THE MAGISTRATE'S**
**REPORT AND RECOMMENDATION DATED MARCH 7, 2025**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1), counsel for Plaintiff Nextpulse, LLC, Kathryn C. Curry, submits this objection to the Magistrate Judge's Report and Recommendations dated March 7, 2024, which recommended fining Ms. Curry $5,000 and referring the matter to the Executive Committee for their review. [Doc. No. 180.] Ms. Curry does not dispute that she caused a legal brief to be filed with the Court that contained non-existent cases. Contrary to Judge Valdez' findings, however, the filing was the result of a series of unfortunate, but honest mistakes. When discovered, Ms. Curry immediately notified opposing counsel and the Court by filing a Notice of Errata, which Ms. Curry believed was the proper legal and ethical action to take. Ms. Curry also personally appeared in court as soon as she was able in order to answer the Court's questions and explain what happened. Contrary to the Magistrate's findings, Ms. Curry was truthful, and the Court's assumptions to the contrary do not accurately reflect what actually occurred.

I.  BACKGROUND

    A.  <u>Complaint Against Life Fitness and Stay of Discovery</u>

In June 2022, Nextpulse, LLC ("Nextpulse") retained GCA Law Partners LLP ("GCA") and Willkie Farr Gallagher LLP ("Willkie") to represent it in a lawsuit to be filed against Life Fitness LLC ("Life Fitness") in the United Stated District Court for the Northern District of Illinois. (Proulx Decl. ¶ 4.) GCA was also representing Nextpulse in a lawsuit venued in San Francisco, California. ("California Action.") (Id.) GCA's attorneys, Kimberly Donovan, E. David Marks, and Kathryn C. Curry, who reside and work in California, applied for and were admitted to appear in this action *pro hac vice*. [Doc. Nos.14, 24.]

The complaint was filed on June 21, 2022. [Doc. No. 1.] On September 22, 2022, Nextpulse filed an amended complaint adding KPS Capital Partners, LP ("KPS") and Lumos Private Holdings, B.V. ("Lumos") as defendants. [Doc. No. 25.] Life Fitness, KPS, and Lumos filed motions to dismiss. [Doc. Nos. 28, 43, 75.] By minute order dated August 22, 2022, the Honorable Minish S. Shah stayed discovery pending Life Fitness' motion to dismiss—the first filed motion to dismiss. [Doc. No. 22.]

On October 3, 2022, the case was reassigned to the Honorable Nancy L. Maldonado. [Doc. No. 31.] The briefing on the motions to dismiss was completed on October 20, 2023. [Doc. No. 86.] On March 31, 2024, Judge Maldonado issued an order, granting in part and denying in part, Life Fitness' motion to dismiss; and granting KPS and Lumos' motions to dismiss. [Doc. 89.]

On May 22, 2024, Judge Maldonado referred the case to the Honorable Maria Valdez for discovery supervision and settlement conference. [Doc. No. 101.]

In June 2024, the parties began engaging in written discovery. (Curry Decl. ¶ 10.)

On July 10, 2024, the case was reassigned to the Honorable Thomas M. Durkin. [Doc. No. 110.]

From June 2024 until late October 2024, Willkie took the lead on motions, meet and confers, and court appearances, although Ms. Curry was involved in all of the matters. (Curry Decl. ¶ 10.)

B.   Nextpulse Decides to Replace Local Counsel in October 2024

In October 2024, Nextpulse's representative became concerned with the significant attorneys' fees being incurred in the case. (Proulx Decl. ¶ 6.) Although Nextpulse was extremely happy with the Willkie attorneys and the work performed, the cash outlay for their fees was not sustainable or practical in light of the overall value of the case and if it continued would substantially diminish the return of a successful settlement or judgment for Nextpulse. (Id.) Nextpulse, therefore, made the decision to try and reduce the fees, if possible, at least through discovery and motion practice. (Id.)

In October 2024, Nextpulse's Managing Member, Thomas Proulx, spoke with his contact at Willkie, the managing partner, with whom he had had a long-term business relationship. (Proulx Decl. ¶ 7.) They openly discussed the financial issues and Willkie agreed to help Nextpulse find and transition to less expensive local counsel. Ideally, Mr. Proulx was looking for a smaller firm that had the ability, time, and experience to handle the case (with assistance from California counsel), at lower hourly rates (Id.) Mr. Proulx requested Willkie to limit its work on the case and let its California counsel, Kathryn Curry, do the majority of the legal work until a replacement could be found. (Id. ¶ 8.) The relationship with Willkie continued to be positive and Nextpulse and Willkie left open to possibly of bringing Willkie back to try the case if it did not settle. (Id.)

In early November 2024, Mr. Proulx began looking for new local counsel with Willkie's assistance. (Id. ¶ 9, 10.)

C.   Ms. Curry's Medical Issues

On November 18, 2024, after an abnormal mammogram, Ms. Curry underwent a second mammogram, which confirmed the earlier findings, and a biopsy was scheduled for December 12, 2024. (Curry Decl. ¶ 12, Ex. 11.)

D.   Life Fitness' Motion to Compel Further Interrogatory Responses

On November 26, 2024, Life Fitness filed a motion to compel further responses to three interrogatories (Nos. 1, 3 and 22). [Doc. No. 140.] By minute order dated November 27, 2024, Magistrate Valdez set the hearing on Life Fitness' motion to compel for December 18, 2024, and

ordered any written response to be filed by 12:00 p.m. on December 11, 2024. [Doc. No. 143.] The minute order stated that remote or telephonic appearances were not allowed. [Id.] Because Nextpulse had requested Willkie to limit its work on the case, it was agreed that Ms. Curry and/or new local counsel (if hired in time), would prepare the opposition. (Curry Decl. ¶ 11.)

  E. <u>Nextpulse Retains New Local Counsel</u>

From late November to early December 2024, Nextpulse interviewed several local Illinois attorneys that had been recommended, including Mark Bagley of Tolpin & Partners, PC. (Proulx Decl. ¶ 10.) Mr. Bagley was first contacted by Nextpulse on October 21, 2024. (Id.) Because Mr. Proulx had liked Mr. Bagley, he asked Ms. Curry to also speak with him about the case, which she did. During their conversation, Ms. Curry told him about Life Fitness' motion to compel and the need for him to appear at the December 18, 2024 hearing. (Curry Decl. ¶ 13; Ex. 1.)

  F. <u>Ms. Curry's Preparation of the Response to Opposition to the Motion to Compel</u>

On December 3 and again on December 9, 2024, Olaf Wilson from Willkie sent an email to Ms. Curry and Mr. Proulx (Nextpulse's representative) to remind them the opposition to Life Fitness' motion to compel was due on December 11, 2024 at noon CT. (Curry Decl. ¶ 14; Ex. 2.) Mr. Wilson also confirmed with Ms. Curry that (pursuant to the client's request) she would be prepare and file the opposition, while Willkie prepared substitution of counsel papers. (Id.)

  G. <u>The Accidental Inclusion of Two Fake ChatGPT Cases in the Response Prepared by Ms. Curry</u>

On Sunday, December 8, 2024, Ms. Curry took her eighth-grade daughter to her office so they could complete her online application for high school. While at the office, Ms. Curry's daughter worked in a conference room preparing three essays to be submitted with the application. While her daughter was preparing her essays, Ms. Curry worked on the opposition to Life Fitness' motion to compel. (Curry Dec. ¶ 15.)Ms. Curry used her firm's subscription with LexisNexis for her legal research. (Id ¶ 16.)

After Ms. Curry's daughter completed her essays, she emailed them to Ms. Curry to upload to the application website. (Curry Dec. ¶ 17, Ex. 3.) Ms. Curry read her daughter's essays and after her daughter asked if they were good, Ms. Curry remarked that they were good, but that the people reading them would know she had not used ChatGPT, which was also a good thing. (Id. ¶ 17.) Ms. Curry (who had just learned she had suspicious findings on her mammogram and who was scheduled to undergo a biopsy in several days) decided to have a teaching moment with her daughter. (Id. ¶ 18, Ex. 11.)

Ms. Curry asked her daughter if she was aware of ChatGPT and the other AI tools. Her daughter responded that she was, but that she did not use them and had been told by her teachers not to use them. Ms. Curry then asked her daughter to promise to never use them for school even though it was going to be very tempting to do so. To emphasize her point and to try and scare her daughter from using it in the future, Ms. Curry explained how AI was often wrong and would make up false facts. (Curry Decl. ¶ 19.)

Ms. Curry told her daughter that ChatGPT made up legal cases and showed her by making a general inquiry into ChatGPT about the Seventh Circuit's specificity requirement for trade secrets. Ms. Curry used this inquiry because she had just completed that section of the opposition. ChatGPT returned a two-paragraph response. Ms. Curry copied the paragraphs into the middle of the specificity section of her opposition in order to show her daughter how the ChatGPT paragraphs looked legitimate in comparison to the other paragraphs and cases in Ms. Curry's brief, when in fact they were not. (Curry Decl. ¶ 20, 21.)

To further her point and in an effort to make it more relatable for her daughter (who had not seen a legal brief before), Ms. Curry then did another ChatGPT inquiry about her grandfather--who was the subject of one of her daughter's essays. Ms. Curry showed her daughter the ChatGPT results, which contained some facts that were true, but also others that were false and made up. (Curry Decl. ¶ 22.)

Having finished her teaching moment, Ms. Curry then uploaded her daughter's essays into the on-line application. She and her daughter (who was sitting with her at her desk) answered

additional questions in the on-line application about the clubs and activities her daughter would be interested in joining for high school. Ms. Curry then completed the parent essay portion of the application, paid the required application fee, logged off, and left the office with her daughter. As she often did, the response to the motion to compel and other word documents remained open on Ms. Curry's computer. (Curry Decl. ¶ 23.)

The following day, Monday December 9, 2024, Ms. Curry had numerous meetings in the morning and did not return to work on the opposition to Life Fitness' motion to compel until that afternoon. She began working on the legal argument sections relating to interrogatory nos. 2 and 22 and had forgotten about the ChatGPT inserts in the section for interrogatory number one. (Curry Decl. ¶ 24.)

Because Nextpulse's opposition had to be filed by noon Central Time, which was 9 a.m. Pacific Time, on December 11, 2024, Ms. Curry arranged with her paralegal to be available to file it the evening of December 10, 2024, to make sure it would be timely filed. (Curry Decl. ¶ 25.)

On December 10, 2024, Ms. Curry completed the draft opposition to the motion to compel in the early evening and sent it to her client for review and comment. (Proulx Decl. ¶ 11.) After receiving the client's comments and redlined edits, Ms. Curry prepared her declaration and finalized the opposition. (Curry Decl. ¶ 26.) Before sending the documents to her paralegal to file, however, Ms. Curry did another review and while correcting a citation to a quotation in the section regarding interrogatory number 1, she remembered the ChatGPT inserts and removed them from the brief thinking, "Oh my god, thank God I remembered. That would have been horrible." (Id.)

When Ms. Curry sent the opposition and declaration to her paralegal (via email attachment) to efile, she unknowingly sent the wrong version of the brief that did not include her last-minute changes removing the non-existent cases. (Curry Decl. ¶27.)

Willkie was not involved in the preparation of the response brief. Aside from the reminder emails to Ms. Curry and Mr. Proulx on December 3 and December 9, 2024, Willkie had no other communications with Ms. Curry (or anyone else) regarding the response--before or after it was

filed. Contrary to Judge Valdez' findings, Willkie did not notify Ms. Curry that the response contained any errors or non-existent cases. (Curry Decl. ¶ 28; see also, Ex. 4.)

      H.    <u>New Local Counsel is Retained by Nextpulse</u>

After interviewing several candidates and completing reference checks, Nextpulse retained Mr. Bagley as its new local counsel on December 11, 2024, the day after the response was filed by Ms. Curry. (Proulx Decl. ¶ 12.) On December 12, 2024, Mr. Bagley at Tolpin & Partners P.C. filed a Notice of Appearance for Nextpulse. [Doc. No. 145.]

On December 12, 2024, Olaf Wilson from Willkie sent an email to counsel for Life Fitness (copying Ms. Curry) to advise that Mark Bagley would be serving as local counsel moving forward and asked if Life Fitness would oppose their motion to withdraw. That was the last communication Ms. Curry received from Willkie about the case. (Curry Decl. ¶ 29; Ex. 4.) On December 13, 2024, Willkie filed motions to withdraw as Plaintiff's counsel, which were granted. [Doc. Nos. 146-148.]

      I.    <u>Mr. Bagley, New Local Counsel, Informs Ms. Curry he Cannot Find Two Cases Cited in her Opposition Brief</u>

After the opposition had been filed and after Mr. Bagley had been retained on December 11, 2024, Ms. Curry contacted Mr. Bagley to assist him prepare for the hearing on December 18, 2024. (Curry Decl. ¶ 30.)

On Monday, December 16, 2024, Mr. Bagley sent Ms. Curry an email stating he could not find two cases cited in the response brief and asked her to double-check the citations and/or send him copies of the cases. (Curry Decl. ¶ 31; Ex. 5.) When Ms. Curry received the email, her heart sank, and she hoped that she had sent Mr. Bagley an incorrect version of the filed opposition. Ms. Curry checked the ECF docket to see what had been filed, and to her dismay, discovered the wrong version of the brief had been file with the court and after further investigation discovered she had sent the wrong version to her paralegal. (Id. ¶ 31.)

Ms. Curry briefly told Mr. Bagley what had happened and immediately began preparing a Notice of Errata to file with the Court to let the Court and opposing counsel know about the two

non-existent cases cited in the brief and the quotation citation error. (Id. ¶ 31.) Ms. Curry did not ask Mr. Bagley about what to do, but did send him a draft Notice of Errata to review before she filed with the Court. (Id. ¶ 31, Ex. 6.) The Notice of Errata was filed within several hours after Ms. Curry received Mr. Bagley's email. [Doc. No. 151.] The Notice of Errata stated:

> PLEASE TAKE NOTICE that Plaintiff Nextpulse LLC's Response to Defendant's Motion to Motion filed on December 10, 2024, inadvertently contains citations to two cases that do not exist—*Harris v. Springfield*, 634 F.3d 622 (7th Cir. 2011) and *Trafalgar Power, Inc. v. Gessner*, 455 F.3d 354 (7th Cir. 2006). The cases are cited on page 5 and 6 of the response and should be ignored. Counsel for Nextpulse LLC, Kathryn C. Curry, noticed the incorrect cases before the response was finalized and had removed them from the brief, but then inadvertently filed the wrong version of the response that still had the citations.
>
> In addition, the citation to *IDX Sys. Corp., 285 F.3d at 583* on page 6 for the quote "clearly refer[s] to tangible trade secret material" is incorrect. The correct cite for that quote is *Imax Corp. v. Cinema. Techs., Inc.,* 152 F.3d 1161, 1164 (9th Cir. 1998).
>
> Ms. Curry profusely apologizes to the Court and co-counsel for the errors. [Id.]

Ms. Curry honestly and in good faith believed that filing a Notice of Errata was the correct, proper, and ethical action she was supposed to take to alert the court, opposing counsel, and the public as to the errors and the non-existent cases in the opposition brief. (Curry Decl. ¶ 33.) Ms. Curry was not attempting to hide what had happened or trying to be evasive or deceitful in any way—she was trying to do the opposite and take full and immediate responsibility. (Id.)

That afternoon, December 16, 2024, Ms. Curry called Mr. Proulx and explained what happened, her interaction with her daughter, and how the fake ChatGPT cases ended up in the draft opposition. Ms. Curry took full responsibility, apologized, and was extremely distressed and upset over the incident. (Proulx Decl. ¶ 13; Curry Decl. ¶ 34.)

J.        <u>Hearing on Life Fitness' Motion to Compel</u>

As previously planned, Mr. Bagley appeared at the hearing on Life Fitness' Motion to Compel for Nextpulse on December 18, 2024. (Curry Decl. ¶ 35.) Ms. Curry, who was in California, did not attend. (Id.) At the hearing, Magistrate Valdez continued it and ordered Ms. Curry to personally appear in court on January 8, 2025, to address the errors in the response brief and the errata. [Doc. No. 152.]

K.        <u>Ms. Curry Notifies the Court and Opposing Counsel that She is Unable to Personally Appear as Ordered on January 8, 2025 Due to Medical Reasons</u>

On December 19, 2024, a week after the biopsy, Ms. Curry was notified by her doctor that she had breast cancer and scheduled an appointment for her to attend a health care team meeting (the surgeon, oncologist, and social workers) on December 26, 2024 (the first available appointment) so that they could explain next steps, treatment, and support options. (Curry Decl. ¶ 36, Ex. 11.)

At the December 26, 2024 meeting, the surgeon told Ms. Curry the biopsy pathology report was encouraging (the cancer was localized, in a small area, and caught very early). He believed she could be successfully treated with surgery (a lumpectomy) and radiation, but they would need the pathology report from the lumpectomy before deciding on the actual course of treatment. The lumpectomy was scheduled for January 2, 2025. (Id.) Ms. Curry told her doctor she had been ordered by a judge to be in Chicago on January 8, 2025, and asked if she would be able to attend that hearing. Ms. Curry's doctor told her no, because there would be a two-week recovery time after the surgery, and she should not travel. (Id.)

The next day, on Friday December 27, 2024, Ms. Curry sent an email to opposing counsel advising she could not personally appear at the January 8, 2025 hearing because of private medical reasons and asked if opposing counsel would object to a request to the court to discuss her medical reasons privately (*ex parte*) with the judge. Opposing counsel advised they did not object, but asked to be present if there were any discussions regarding the motion to compel. (Curry Decl. ¶ 37, Ex. 7.) That same day, Ms. Curry sent an email to the Court advising she could not appear at

the hearing in person due to medical reasons and requested to permission to speak ex parte with the Court regarding those reasons. (Curry Decl., Ex. 8.)

On Monday December 30, 2024, Magistrate Valdez issued a Minute Order ordering Plaintiff's counsel to file under seal and without service to opposing counsel a statement as to the reasons she could attend the hearing set for January 8, 2025, along with an estimate as to dates she may be available to appear in person with all sensitive information redacted. Counsel was ordered to submit an unredacted version of the statement to the court no later than January 3, 2025. [Doc. 154.] That day, Ms. Curry sent the requested declaration to Judge Valdez and filed a redacted version of it with the court. [Curry Decl. ¶ 38, Ex. 9; Doc. No. 155.]

In her declaration, Ms. Curry explained her medical situation and stated she could not travel, but could appear telephonically at the January 8, 2025 hearing or remotely anytime thereafter. (Curry Decl. ¶ 39, Ex. 9, ¶ 13.) If required to personally appear, Ms. Curry would not be able to provide dates until after her oncologist received the pathology report from the January 2, 2025 lumpectomy. (Id. ¶ 14.)

  L. <u>Magistrate Valdez Grants Life Fitness's Motion to Compel in its Entirety and Issues and OSC To Ms. Curry to Appeal Personally in Court When Available</u>

By minute order dated December 31, 2024, Magistrate Valdez ordered the January 8, 2015 hearing stricken and granted Life Fitness' motion to compel in full because: "Plaintiff's response in opposition is entirely deficient. Not only did Plaintiff's response cite at least two cases that do not exist, the remaining legal arguments contained therein lack the support for the propositions asserted and, in many instances, lack correct basic legal citation." [Doc. No. 156.] The Court also issued a Rule to Show Cause requiring Ms. Curry to personally appear on the first Wednesday she is available and to advise the Court of her availability as soon as possible. [Id.]

  M. <u>Ms. Curry is Medically Cleared to Travel to Chicago and Notifies the Court</u>

The pathology reports from the January 2, 2025 lumpectomy were completed on January 13, 2025 and disclosed to Ms. Curry by her surgeon that day (Curry Decl. ¶ 40); and a video appointment was scheduled for her to meet with the oncologist on January 27, 2025 (the earliest

appointment), to discuss the results and treatment. (Id., Ex. 11.) On January 27, 2025, the oncologist, Dr. Lee recommended three weeks of radiation treatments (Monday through Friday) to begin the week of February 3, 2025. (Id. ¶ 41.) Ms. Curry asked Dr. Lee if she could postpone the radiation treatments until the following week (February 10, 2025), because she had been ordered by a judge to be in Chicago on February 5, 2025. (Id., Ex. 11.) Dr. Lee agreed her treatment could be postponed and the radiation treatments were scheduled to begin on Monday, February 10. (Id.)

On January 29, 2025, Ms. Curry notified the Court she was available to personally appear on February 5, 2025 (Curry Decl. ¶ 42); and a Minute Order was issued that day. (Doc. No. 162.] Ms. Curry made travel and childcare arrangements so she could be in Chicago on February 5, 2025. (Curry Decl. ¶ 43.)

On February 4, 2025, as Ms. Curry was about to head to the airport, the Court issued a minute order striking the February 5, 2025 hearing and resetting it for February 12, 2025. [Curry Decl. ¶ 44; Doc. No. 166.] Ms. Curry notified Dr. Lee she needed to further postpone the start of her radiation treatments another week. (Curry Decl. ¶ 45, Ex. 11.) The radiation treatments were rescheduled to begin on February 18, 2025. (Id.)

N. February 12, 2025 Hearing

Ms. Curry personally appeared before the Court on February 12 , 2025. Ms. Curry explained what had happened and answered the Court's questions. Ms. Curry answered all questions truthfully and was trying to be straightforward with her answers and was not, as the Court later surmised, trying to be vague or evasive with any of her answers. (Curry Decl. ¶ 46, Ex. 10 [transcript].)

O. Recommendation and Report

On March 7, 2025, Magistrate Valdez issued her Report and Recommendation. [Doc. No. 180.] The Report recommended that Ms. Curry be fined $5,000 and that the matter be referred to the Executive Committee for possible further action.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b) permits a party to "serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. Under the clear error standard, the district court will overturn the magistrate judge's ruling if it is "left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. C*o., 126 F.3d 926, 943 (7th Cir. 1997).

## III. ARGUMENT

### A. The Magistrate's Findings that Ms. Curry was Dishonest and Not Forthcoming with the Court are Not Supported and Untrue

Although the Court did not believe her, Ms. Curry did tell the Court the truth and tried to answer all questions honestly and completely. (Curry Decl. ¶¶ 9-53.) Ms. Curry has been practicing law since 1991 and a member of the California Bar Association. She has never been had any ethical violations or disciplinary issues. (Id. ¶ 5.) She has received the highest ethical ratings from her peers and is AV rated by Martindale Hubbel with an AV Preeminent rating in Legal Ability & Ethical Standards. (Id.) For many years, she has been on her firm's Risk Management/General Counsel Committee providing counseling and advice to the firm on various legal, ethical, and conflict issues. (Id. ¶ 6; see also. Proulx Decl. ¶ 5, 14.)

1. *The Court's Finding that Willkie Substituted Out of the Case Because of the False Case Citations in the Opposition was Not Reasonable, Supported, or True; and Ms. Curry Immediately Notified the Court and Opposing Counsel of Her Mistake Upon Discovery*

Judge Valdez's conclusion that Willkie withdrew from the case due to the alleged false filing (Report p. 7) is both unsupported and inaccurate. The Court's findings—that "it can be reasonably inferred that an attorney at Willkie was the one who intended to argue the motion and contacted Ms. Curry about the false cases in the brief, and that they contacted her not five days

after the filing, as she claimed, but less than two days later, prior to their withdrawal"—are equally unsupported and unreasonable.

As set forth above, the change in local counsel was coincidental and had nothing to do with the opposition that Ms. Curry filed. (Proulx Decl. ¶¶ 6-12; Curry Decl. ¶ 54.) Nextpulse made the decision to replace Willkie in October 2024. (Proulx Decl. ¶ 6, 7.) Mr. Bagley was first contacted by Mr. Proulx on November 21, 2024, interviewed in early December, and retained on December 11, 2024. (Proulx Decl. ¶ 10, 12.) Nextpulse had been interviewing new local counsel for weeks before the opposition was filed. At Nextpulse's request, Willkie was not involved in preparing the opposition, and no one at Willkie planned, intended, or was expected to argue the motion at the hearing on December 18, 2025. (Proulx Decl. ¶ 8; Curry Decl. ¶¶ 13, 14, 28, 29, Ex. 1.) No one at Willkie ever contacted Ms. Curry about the brief or any errors contained therein. (Id.)

The Court's speculative inferences were not only incorrect, they were not reasonable because the Court did not ask Ms. Curry about Willkie's involvement (or lack thereof) at the February 12, 2025 hearing, which Ms. Curry would have answered if asked. (Ex. 10, Curry Decl.) Ms. Curry did not mention Willkie at the hearing, because they were not involved in the filing of the opposition. Ms. Curry did not know that her answers were vague, and they were not meant to be. (Curry Decl. ¶ 33.) Ms. Curry would have provided the Court with the additional information as why Willkie was replaced if she had been asked. Finally, Mr. Bagley was also present at the February 12, 2025, hearing and the Court could have asked him when he was first contacted and retained. (Curry Decl., Ex. 10.)

Judge Valdez' conclusion that Ms. Curry sat on the information for several days before notifying the Court and opposing counsel is also untrue. Ms. Curry first learned of her error on December 16, 2024, when Mr. Bagley sent her an email (Curry Decl. ¶ 53, Ex. 6), and within hours filed a Notice of Errata in an attempt to rectify her mistake. Although the Court disagreed, Ms. Curry honestly and in good faith believed that filing a Notice of Errata was the correct,

proper, and ethical action to take in order to alert the court, opposing counsel, and the public as to the errors and the non-existent cases in the opposition brief. (Curry Decl. ¶ 53.)

2. *Ms. Curry Did Not Generate the ChatGPT Paragraphs With the Intent to Use Them in Her Brief*

Contrary to the Judge Valdez' findings, Ms. Curry did not generate the ChatGPT results with the intention of using them as part of her legal argument in the opposition to the motion to compel. (Curry Decl. ¶¶ 48-51.) She used LexisNexis for the legal arguments in her brief; and only used ChatGPT as a tool for a teaching moment with her daughter. (Curry Decl. ¶ 48.) The brief was already open on Ms. Curry's computer and she placed the ChatGPT results into the brief to visibly show her 13-year old daughter how they looked real in comparison to the other cases and argument in the brief. (Curry Decl. ¶ 50.) Although Ms. Curry agrees it was a very stupid decision to have put the ChatGPT paragraphs into her draft brief, and then to fail to immediately delete them, that unfortunately is what actually happened. (Id.; see also, Proulx Decl. ¶ 13.)

Judge Valdez' conclusion that Ms. Curry must have intended to use the case because they were "foundational" to Ms. Curry's legal argument is not accurate or true, as is her finding that the trade secret legal arguments were only supported by a 2007 case from the District Court of Georgia. A review of the brief shows that the two ChatGPT generated cases are located in the middle of the specificity argument—where Ms. Curry placed them so my daughter could see them in comparison to the other statements in the brief. (Doc. No. 144, pp. 4-8; Curry Decl. ¶ 50.) If Ms. Curry had believed the cases were real and had intended to use them in the brief, she would have placed them at the beginning of the specificity argument and before the Georgia case, not after. (Curry Decl. ¶ 49.) The opposition also contains citations to, and discusses, several Seventh Circuit and an Illinois District court cases in support of Nextpulse's specificity arguments. (See, Opposition at pp. 6-8.) Indeed, Ms. Curry cited to a factually similar case from the Northern District of Illinois, *AutoMed Techs, Inc. v. Eller*, 160 F.Supp.2d 915, 920-21 (N.D.

Ill. 2001), which specifically involved source code as the trade secrets. Ms. Curry also discussed and distinguished the cases cited by Life Fitness in its motion. (Opp pp. 6-7, and fns. 2 and 3.)

## IV. CONCLUSION

Ms. Curry acknowledges the seriousness of filing a brief with non-existent cases and fully accepts responsibility for her actions. She understands that she may be fined by the Court for the imposition caused by that false filing. However, the Court's findings and inferences regarding what it believes transpired, as well as the conclusion that Ms. Curry acted dishonestly, are simply not accurate. Ms. Curry did tell the truth as to what happened—it was an accident—and she immediately notified the Court and opposing counsel of the errors after discovering her mistake. (Curry Decl. ¶ 55.) Accordingly, Ms. Curry respectfully requests that the Court not adopt the Magistrate's Report and Recommendations and instead, reduce the amount of the monetary sanctions, and reverse the Magistrate's findings that Ms. Curry acted dishonestly and outrageously, and not refer the matter to the Executive Committee for review.

Dated: March 21, 2025  Respectfully submitted,

By: /s/ Kathryn C. Curry
Kathryn C. Curry (kcurry@gcalaw.com)
*Admitted Pro Hac Vice*
**GCA Law Partners LLP**
2570 W. El Camino Real, Suite 400
Mountain View, CA 94040
(650) 428-3900

Mark R. Bagley
**Tolpin & Partners, PC**
30 N. LaSalle Street, Suite 1510
Chicago, IL 60602
Phone: 312-698-8971
e-mail: mark@tolpinlaw.com

*Attorneys for Plaintiff Nextpulse, LLC*